Mary L. STIDHAM, Plaintiff,

v.

WHITE CONSOLIDATED INDUSTRIES, INC.; Ralph Richmond; the International Union of the United Automobile, Aerospace and Agricultural Implement Workers of America; Local Union # 137, UAW; David Kohn; and Carl Harris, UAW, Jointly and Severally, Defendants.

No. G86–197.

United States District Court, W.D. Michigan, S.D.

Dec. 11, 1987.

Frederick C. van Hartesveldt, III, Grand Rapids, Mich., for plaintiff.

Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Grand Rapids, Mich. by John H. Gretzinger, for White Consol. Industries.

Kleiner and Fayette, Grand Rapids, Mich. by Michael L. Fayette, for Intern. Union, UAW.

## OPINION

ENSLEN, District Judge.

This case is before the Court on the motions for summary judgment brought by defendants International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW" or "international"), and UAW's Local Union 137 ("local") pursuant to Federal rule of Civil Procedure ("FRCP") 56. The defendant White Consolidated Industries ("White") has filed a response to this motion asserting that it too is entitled to summary judgment in the event that the Court grants the union defendants' motions. For the reasons discussed below, the Court will grant the defendants' motions, and will enter judgment in favor of all three defendants.

### Facts

The facts of this case are relatively clear. Plaintiff is a former employee of defendant White, and a former member of defendants UAW and Local 137. Her employment with the defendant White was terminated on August 13, 1985, at 11:10 p.m., when she left her place of employment without permission in violation of Shop Rule 29. This rule provides as follows: "29. Leaving the plant during working hours without permission. First offense: three day suspension up to and including discharge." Plaintiff was informed of the termination of her employment on August 14, 1985 when she attempted to report to work.

Plaintiff began working for defendant White on November 7, 1973 as an assembly line worker. On July 11, 1985 plaintiff was temporarily laid off by White. Shortly

thereafter, White notified plaintiff that she was to report back to work on August 13, 1985. Prior to being laid off, plaintiff worked the 3:00 p.m. to 11:00 p.m. shift. During her lay-off, White changed the shift ending time to 11:30 p.m. Plaintiff appears not to have known of this time change prior to reporting back to work on August 13. Plaintiff objected vigorously to the time change, both to her foreman, Dean Arnette, and to her union stewards.

Foreman Arnette informed plaintiff that she would be fired if she left the plant early. Plaintiff's union stewards gave her the same advice. Plaintiff chose to leave the plant at 11:00 p.m., despite these warnings. She offered two reasons for her decision to leave early: (1) she needed to notify her 14 year old son of the change in her hours and had been unable to use a telephone at the plant to do so; and (2) she needed to get gas for her trip home and believed that there was not a nearby gas station which would remain open after 11:30 p.m. The parties dispute whether she informed either her union stewards or her foreman of these reasons before she left work. They also dispute the accuracy of these reasons.

On August 14, 1985 plaintiff filed a grievance in accordance with the collective bargaining agreement ("the agreement") in effect between the defendants, challenging that defendant White's decision to terminate her employment was a breach of that agreement. Local 137 pursued plaintiff's grievance through four steps of the five-step grievance procedure; the fifth step was arbitration. On November 7, 1985 Local 137 informed plaintiff that it had decided to withdraw her grievance, and would not be pursuing it to arbitration. Plaintiff's protest of this decision was rejected, but the local continued to raise the issue of her discharge with White. On December 10, 1985, the local informed plaintiff that defendant White had agreed to reinstate her, but to another job and subject to certain conditions, including loss of her bidding and bumping rights and a two-year term of probation. Plaintiff rejected this proposed settlement. The local thereafter dropped its efforts on plaintiff's behalf.

Plaintiff began an intra-union appeal, but abandoned it in favor of this action.

### Standard

In considering a motion for summary judgment, the narrow questions presented to this Court are whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FRCP 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party has a right to summary judgment where that party is able to demonstrate, prior to trial, that the claims of the plaintiff have no factual basis. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Supreme Court held in *Celotex*, "... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* 477 U.S. at 322, 106 S.Ct. at 2552-53, 91 L.Ed.2d at 273. Where, as here, the moving defendants have supported their motion with affidavits and other documents, the plaintiff may not rest on the mere allegations or denials of the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." FRCP 56(e); *Davis v. Robbs*, 794 F.2d 1129, 1130 (6th Cir.1986). "The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986). With this standard in mind, the Court will review the arguments presented by both parties.

### Discussion

Plaintiff asserts in her amended complaint that the union defendants violat-

ed section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by breaching their duty of fair representation in the handling of her grievance against White. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A disenchanted union member need not show bad faith on the part of union officials; "[u]nion action which is arbitrary or discriminatory need not be motivated by bad faith to amount to unfair representation." *Rudzicka v. General Motors Corp.,* 523 F.2d 306, 310 (6th Cir.1975) (*Rudzicka I*). Mere negligence or misunderstanding of applicable legal standards on the part of union officials will not, however, suffice to establish a breach of the duty of fair representation. *Poole v. Budd Co.,* 706 F.2d 181, 184–85 (6th Cir.1983). A plaintiff rather, must at a minimum allege and establish that the union committed a "gross mistake" or engaged in "inaction without a rational basis." *Elliott v. United States Postal Service,* 621 F.Supp. 1093, 1097 (W.D.Mich.1985); *see also Rudzicka I,* 523 F.2d at 310 ("arbitrary and perfunctory handling of a grievance" constitutes breach of duty of fair representation). The defendants argue that the plaintiff has failed to establish that they acted arbitrarily or in bad faith in processing her grievance and appeal. Plaintiff makes several arguments in favor of her claim that the defendants processed her grievance in a perfunctory and an arbitrary manner. The Court will consider each of these arguments in turn.

■ First, plaintiff argues that the local breached its duty of fair representation by not objecting to the change in the shift ending time instituted by White. While plaintiff asserts that this time change was in violation of the collective bargaining agreement, she offers no evidence to support this interpretation of that agreement. Defendants maintain that the change in hours was consistent with the agreement. A review of the agreement, submitted by plaintiff in her response to the defendants' motion to dismiss, reveals no indication that the change in the shift ending time was contrary to the agreement. Even assuming that the time change violated the collective bargaining agreement, the defendant's belief that it did not was, at most, "a negligent misunderstanding of a legal standard...." *Poole v. Budd Co.,* 706 F.2d 181, 185 (6th Cir.1983). Such a misunderstanding is insufficient to establish the "arbitrariness or reckless disregard required to establish a breach of the duty of fair representation." *Id.* at 185. Thus, plaintiff's first argument must fail.

■ Plaintiff next argues that she received insufficient notice of the change in her shift ending time. Although, as plaintiff points out, the agreement obligates the defendants and White to notify employees of certain changes in their employment status by registered mail or other forms of personal notice, it makes no similar provision for notice of changes in shift ending times. Thus, neither the union nor the employer were obligated to provide the plaintiff with personal notice of the change in schedule. The question, however, is not whether either defendant breached the collective bargaining agreement, but whether the defendant unions acted arbitrarily, discriminatorily or in bad faith toward the plaintiff by failing to provide her with more effective notice of the time change. Again I find that they did not. There is no evidence that other employees received more effective notice or that any of the defendants acted in bad faith by failing to provide a more efficient means of notice to their employees or members.

Third, plaintiff argues that she had good reasons for leaving the plant early. She argues that the defendant unions breached their duty by failing to adequately present these reasons to White either at the time of her discharge or during the grievance procedure. Plaintiff protests that she was unaware that gas stations near the plant remained open after 11:30 p.m. and that she was unable to use a phone during her shift due to long lines at the pay phones and a lack of knowledge that she could use the company phones.

■ While these arguments may establish that the plaintiff's grievance had some merit, "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious...." *Vaca v. Sipes,* 386 U.S. 171, 195, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967). Again, the only question before the Court is whether the alleged failure of the union defendants to raise these arguments amounted to arbitrary, discriminatory or bad faith treatment of the plaintiff. *Id.* at 190, 87 S.Ct. at 916. The parties dispute whether the plaintiff informed her union representatives on August 13, 1985 of her reasons for leaving early. There is no dispute, however, that the union raised these arguments with the employer during the grievance process.

Even assuming, as I must, that the union representatives did not vigorously defend Ms. Stidham prior to her discharge, I still can find no breach of the duty to defend. The asserted failure to raise her arguments with White at the time of her discharge was reasonable in light of the Shop Rule she violated, and in light of the representatives' apparent belief that nothing could be done to mitigate the severity of the sanction at the time plaintiff was discharged. *See,* Affidavit of Carl M. Harris at 2; Plaintiff's Brief at 5 (quoting union representatives). Shop Rule 29, which the plaintiff admits she violated, allows for discharge as a punishment for a first offense. Thus, the union representatives' failure to raise these issues with White at the time of plaintiff's discharge amounts, at most, to a negligent misunderstanding of plant practice and the standards which would govern White's decision. *See, Poole,* 706 F.2d at 185; *Ruzicka v. General Motors Corp.,* 649 F.2d 1207, 1212 (6th Cir.1981) (negligent misunderstanding or reliance on past practice not a breach of duty).

■ It is undisputed that the plaintiff's union representatives raised her reasons for leaving early with White management during the grievance process. The union abandoned plaintiff's grievance after the fourth step, and prior to arbitration, because it believed that she would not prevail at arbitration. The law is clear that a union member has no absolute right to have his or her grievance pursued through arbitration. *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917. As the Sixth Circuit explained in *Dill v. Greyhound Corp.,* 435 F.2d 231, 238 (6th Cir.1970), "An employee does not have an absolute right to require his bargaining representative to 'press his complaint all the way to the very end of the grievance procedures made possible by the collective bargaining agreement.... It follows from this that proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation.'" (*quoting, Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3rd Cir.1970)). Moreover, the general rule in such cases is that, where the union's decision to abandon a grievance is based upon its perception of the merits of the claim, no action for breach of the duty of fair representation will lie. *See, Ruzicka v. General Motors Corp.,* 649 F.2d 1207 (6th Cir.1981) (no breach of duty where union "can articulate a sufficient legal rationale to justify the manner in which a grievance has been handled."); *Poole,* 706 F.2d at 186.

Finally, there is no evidence that the union failed to inform White of Stidham's reasons for leaving early during the grievance process, or that the union defendants handled her grievance in a perfunctory manner or in a manner which defies rational explanation. *Poole* at 183. Rather, it seems clear to the court that the union defendants' decision to abandon the grievance was based upon a realistic and good faith assessment of the merits of her claim. Thus, the plaintiff's argument on this point must fail.

■ Plaintiff next argues that the union defendants failed to raise the issue of disparate treatment with White. Plaintiff argues that the sanction of discharge was unusually harsh and that other employees had been allowed to leave the plant on other occasions with less important reasons than plaintiff. *See,* Plaintiff's Brief at 7. Section 61 of the Collective Bargaining Agreement provides, in relevant part:

"Such authority [to make and enforce shop rules, hire or discharge employees, etc.] shall not, however, be used for the purpose of unjustly discriminating against any employee nor shall it be used in a manner inconsistent with any of the other provisions of this Agreement." Plaintiff argues that her discharge was impermissible disparate treatment in violation of this section since other employees had committed the same violation and received less harsh punishments.

Plaintiff's argument must, again, fail. The union defendants' failure to present this argument in her favor was, at most, a negligent misunderstanding of the agreement. As the Sixth Circuit held in *Poole:*

> Union representatives are not to be strictly held to the standards of attorneys. Mere negligent misunderstanding of a legal standard, such as that alleged in this case, does not constitute the arbitrariness or reckless disregard required to establish a breach of duty of fair representation.

706 F.2d at 185. Leaving aside the question of whether White's action could be said to violate § 61 of the agreement, the union's failure to raise this argument simply does not evidence the kind of reckless disregard or perfunctory handling necessary to establish a breach of the duty of fair representation. The union raised, in plaintiff's behalf, the arguments which it felt would be persuasive. It is not for the Court to second-guess such strategic choices where they do not suggest gross negligence or incompetence. *See, e.g., Williams v. Teamsters Local Union No. 984*, 625 F.2d 138 (6th Cir.1980). As the Supreme Court noted in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338–39, 73 S.Ct. 681, 686–87, 97 L.Ed. 1048 (1953), "A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." I do not find, on the facts presented to me, that the union's failure to raise plaintiff's asserted § 61 argument implies a lack of good faith or honesty of purpose. Thus, plaintiff's argument on this point must also fail.

Plaintiff next argues that the Court should not consider her failure to accept the union's belated settlement of her grievance because it occurred after the union decided to withdraw her grievance. Even if it is to be considered, the plaintiff argues, it does not demonstrate the union's good faith because it was not a genuine offer of reinstatement. Plaintiff contends that the offer was not genuine because it required her to lose her bidding and bumping rights, because it placed her on a different job assignment and because it placed her on probation for two years. She argues alternatively that the offer provides evidence of the local's bad faith because the local failed to object to its unusually harsh terms and because it did not fully explain the terms of the offer to her.

Once again, I must disagree. The fact that the local continued to press plaintiff's claim after it withdrew her grievance demonstrates that the local acted with complete good faith toward plaintiff. The fact that the terms of the settlement were unacceptable to plaintiff does not demonstrate otherwise. As the Supreme Court pointed out in *Vaca*, union representatives must be given wide latitude to settle grievances short of arbitration. *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. The union's judgment that a settlement is the best agreement it could negotiate on behalf of its member must not be disturbed by the Court unless it demonstrates a perfunctory, arbitrary or bad faith handling of the grievance. *Id.* While plaintiff's failure to accept the offer ought not be held against her, the fact that the local negotiated this compromise, even after it abandoned her grievance, may be taken into account in determining whether it acted in an arbitrary or bad faith manner. Since I can see no evidence that the local acted in such a manner in negotiating this settlement, I find plaintiff's argument on this point unpersuasive and will reject it.

The plaintiff's final two arguments are equally unpersuasive. Plaintiff contends that she was prevented from taking notes when she went to the plant to review her

work records. Plaintiff's Brief at 9. She further contends that Keith Olsen, the Chief Steward from the Greenville plant, was present while she reviewed her records and later testified as a witness for White at a hearing before the Michigan Employment Security Commission ("MESC"). Finally, plaintiff contends that the local's failure to assist her in prosecuting her intra-union appeal constituted a breach of the duty of fair representation. Defendants do not contest these facts.

■ Assuming the facts stated above to be true, I can find in them no evidence of a breach of duty by either union defendant. The fact that a union steward testified in favor of the employer at a hearing before the MESC may imply something about the union's opinion of the merits of Ms. Stidham's grievance, but it does not establish that the union failed to evaluate the merits of her grievance in good faith or that it failed to pursue her grievance with diligence and reasonable care. Finally, it should be noted that Mr. Olsen appeared as a witness for the employer on April 10, 1986, more than four months after the union withdrew plaintiff's grievance and almost eight months after plaintiff's discharge. Thus, I find his appearance at that hearing to have little relevance to the issue of fair representation during the grievance process. At most, his appearance demonstrates that the union intervened on the employer's behalf after it had determined plaintiff's grievance to be without merit.

■ The fact that employees of White prevented plaintiff from taking notes from her personnel file or limited her time for reviewing that file says nothing whatever about the union's treatment of plaintiff. In her second amended complaint, plaintiff expressly states that it was an employee of White who prevented her from taking notes and limited her review of her file. Amended Complaint at 6–7. This conduct may not be imputed to the union defendants. Mr. Olsen's failure to support plaintiff's desire to take notes from her file also does not establish bad faith on the part of the union. While Mr. Olsen could have been more supportive of plaintiff at the time, this does not imply that the union defendants failed to process her grievance diligently or in good faith. Even if Mr. Olsen acted in bad faith toward plaintiff, there simply is no evidence that other union officials, particularly those directly involved in processing her grievance, acted in a similar manner.

■ Finally, while the union defendants do not appear to have actively assisted Ms. Stidham in prosecuting her intra-union appeal, this also does not establish bad faith or arbitrary conduct on their part during the grievance procedure. In its opinion of January 12, 1987, the Court found that plaintiff was not required to exhaust her intra-union appeal in order to maintain this action. Thus, the union defendants' failure to assist plaintiff in prosecuting her intra-union appeal did not prejudice plaintiff in this case. Moreover, the fact that the union defendants did not actively assist plaintiff in prosecuting her appeal, when she stood in an adversarial relationship to them, does not establish that they acted arbitrarily or in bad faith during the relevant period of time—the period in which they were charged with the protection of her interests.

In short, after reviewing the evidence and arguments in this case, I can find no evidence of a breach of the duty of fair representation by the union defendants. It appears to the Court that the union defendants pursued plaintiff's grievance diligently and in good faith. Their decision to withdraw the grievance prior to arbitration was based upon a reasonable and good faith estimation of the merits of plaintiff's claim. During this process, the defendants clearly pressed what they believed to be the most persuasive arguments in her favor. Thus, the fact that they may have presented other arguments, but did not, amounts to negligence at the most. Finally, the union defendants successfully negotiated a settlement of the grievance even after they had withdrawn it, which settlement the plaintiff rejected. From these facts, it appears clear to the Court that the union defendants did not act arbitrarily or in bad faith toward the plaintiff. Thus, I will grant

defendants' motion for summary judgment and dismiss the case against them. This decision obviously requires me to dismiss the defendant White Consolidated Industries as well, since the liability of the union defendants is a prerequisite to White's liability under section 301.

 Because the liability of both the local and the international unions may be determined on the merits of plaintiff's claim, I will not reach the international's argument that it may not be held liable for breaches committed by the local. *See,* Defendants' Brief at 5–6. I note, however, my agreement with the proposition that the international may not be held responsible for the actions of its locals where the international had no control over those actions and did not ratify them. *See, Hall v. Printing and Graphic Arts Union Local #3,* 696 F.2d 494, 500 (7th Cir.1982); *Shimman v. Frank,* 625 F.2d 80, 98 (6th Cir.1980) ("The wrongful conduct of these local union leaders cannot be imputed to the International absent proof of actual International participation or ratification...."). In this case, there is no evidence to suggest that the International union approved of, controlled or ratified the actions of its local. Thus, the international would be entitled to summary judgment even if the local was not.

## JUDGMENT ORDER

In accordance with the written opinion filed on December 11, 1987;

IT IS HEREBY ORDERED that the defendants' International Union of the United Automobile, Aerospace and Agricultural Implement Workers of America and Local Union #137, UAW Motion for Summary Judgment is GRANTED;

IT IS FURTHER ORDERED that the defendant White Consolidated Industries, Inc.'s Motion for Summary Judgment is GRANTED;

IT IS FURTHER ORDERED that Judgment shall be entered in favor of defend-ants and against plaintiff, Mary L. Stidham and that this case be DISMISSED.