**Elisabeth M. SALISBURY, Plaintiff,**

v.

**THERMATEX CORP., et al.,
Defendants.**

No. C86–663Y.

United States District Court,
N.D. Ohio, E.D.

May 17, 1988.

Ned J. Casale, Gregory Huber, Alliance, Ohio, for plaintiff.

Clair M. Carlin, Youngstown, Ohio, Steven M. Nobil, John E. Holcomb, Millisor & Nobil, Akron, Ohio, Thermatex Corp.

Wm. O. Puncer, John R. Doll, Trial Atty., Dayton, Ohio, for Allied Indus. Workers of America, AFL–CIO Local 621.

## MEMORANDUM OF OPINION

BATCHELDER, District Judge.

This matter is before the Court on the motions of defendants Thermatex Corp. (Thermatex) and Allied Industrial Workers of America, AFL–CIO 621 (Union) for summary judgment pursuant to Fed.R.Civ.P. 56. Upon a thorough review of the motions, the memoranda of the parties, depositions, exhibits, affidavits, and the applicable law, the Court finds that the motions for summary judgment are well taken and therefore must be granted.

## STATUTE OF LIMITATIONS

Plaintiff alleges that Thermatex violated § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by discharging her without just cause in violation of the terms of the collective bargaining agreement. Additionally, Plaintiff alleges that the Union breached its statutory duty of fair representation by processing her wrongful discharge grievance in an arbitrary, capricious, perfunctory, and/or bad faith manner and by refusing to arbitrate her discharge subsequent to the termination of the grievance procedure.

▪ It is clear that hybrid § 301/fair representation actions such as this are subject to a six month statute of limitations. *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 156, 103 S.Ct. 2281, 2286, 76 L.Ed.2d 476 (1983); *Shapiro v. Cook United Co.*, 762 F.2d 49, 51 (6th Cir.1985). Moreover, the statute of limitations "... begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Shapiro*, 762 F.2d at 51.

In the instant case, Plaintiff received her termination notice on July 22, 1985, and Robert Kelly, the Union President, contacted her that evening to discuss filing a grievance relative to the discharge.[1] On July 23, 1985, Kelly initiated step II of the grievance procedure by filing a grievance with Thermatex. On July 24, 1985, Thermatex denied the grievance and within a few days the Union Committee, Del Caster, the Regional Representative, and repre-

---

1. The collective bargaining agreement contains a provision, Article V—Grievance Procedure, for a three step grievance procedure which may be followed by arbitration.

sentatives of Thermatex held a step III grievance meeting to discuss Plaintiff's discharge. During step III of the grievance procedure the Union was unable to have Plaintiff's discharge reversed and subsequently decided not to proceed to arbitration with Plaintiff's grievance. Kelly telephoned Plaintiff on August 14, 1985, to inform her that the Union had decided not to take her grievance to arbitration.[2]

Additionally, the undisputed evidence also indicates that on August 16, 1985, Plaintiff appeared in the offices of the Ohio Bureau of Employment Services (OBES) to apply for unemployment compensation benefits. On that date, August 16, 1985, an OBES examiner, Peggy Zeppernich, recorded the following:

> Claimant stopped into my office today. She had a letter from her union stating they were not going to fight her case, action had been dropped.

Thus, it is clear that at some point in time prior to appearing in the offices of the OBES on August 16, 1985, Plaintiff knew that step III of the grievance procedure had been completed and that the Union had decided not to proceed to arbitration over her grievance. As a result, the February 28, 1986, filing of the complaint in this case was not within the six month statute of limitations, which began to run no later than August 16, 1985.

Assuming *arguendo*, that the complaint had been timely filed, the Court finds that the Union did not breach its duty of fair representation owing to the Plaintiff. Plaintiff alleges that the Union breached its duty of fair representation by not notifying her of the time and location of the various meetings held with respect to her grievance and by not pursuing her grievance through arbitration.

At the outset, it should be noted that "a breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Moreover, the Supreme Court has held that "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

Upon a thorough review of the entire record in this matter, the Court finds that there is no evidence, other than Plaintiff's conclusory allegations, to support Plaintiff's claims that her grievance was processed in a bad faith, arbitrary, and/or discriminatory manner. Conclusory allegations of discrimination or bad faith are legally insufficient to maintain an action against a union for breach of its duty of fair representation. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975). Rather, the Plaintiff is under a duty to make an affirmative showing that the union's conduct was discriminatory, arbitrary, or motivated by bad faith.

Plaintiff makes much of the fact that no evidence was produced and no witnesses were called during the meetings which were held relative to her grievance. However, from a thorough review of the record it is clear that this is not a case where the underlying facts of Plaintiff's termination were in issue. It cannot be disputed that Plaintiff had accumulated more hours of absence than was allowed by the Absenteeism Rules and that these hours of absence did not fall within any of the exceptions set forth therein. Plaintiff's only evidence to the contrary was her subjective belief that the presentation of a doctor's excuse for her husband's illness, not her own, should somehow recharacterize her absences as excused, rather than unexcused. It is clear, however, that the exception upon which Plaintiff attempts to rely requires that the employee, and not other members of his or her family, personally suffer the illness for which the excuse is presented. Thus, regardless of whether the Union had presented Thermatex with Plaintiff's doctor's excuses during the course of this

---

**2.** *See* Kelly Dep. 86; Kelly Affidavit ¶ 3 and Attachment A; Plaintiff's Dep. 47.

grievance procedure, they would not have had any effect on the outcome.

 Moreover, based on the particular nature of this grievance procedure it is clear that Plaintiff's absence from the various grievance procedure meetings in no way prejudiced her chances of being reinstated. Therefore, even if the Union's failure to notify Plaintiff of the time and location of those meetings rose to the level of bad judgment or even negligence,[3] under the facts of this particular case it is clearly insufficient to constitute a breach of the Unions' duty of fair representation. *Whitten*, 521 F.2d at 1341; *Singer v. Flying Tiger Line, Inc.*, 652 F.2d 1349, 1355 (9th Cir.1981).

 The fact that the Union did not pursue Plaintiff's grievance through arbitration is also legally insufficient to support a claim for breach of the statutory duty of fair representation. While a union may not ignore a meritorious grievance or process it in a perfunctory manner, an employee has no absolute right to have a grievance taken through arbitration. *Vaca*, 386 U.S. at 190–92, 87 S.Ct. at 916–18. Rather, the union's decision whether to process a grievance through arbitration is judged in light of its statutory obligation to represent the employee's interest in good faith and refrain from discriminatory conduct which prevents that employee from pursuing a legitimate claim that his/her employer has breached one or more provisions of the collective bargaining agreement. *Whitten*, 521 F.2d at 1341; *Vaca*, 386 U.S. at 193, 87 S.Ct. at 918. Thus, regardless of whether Plaintiff can show that she would prevail on her claim that Thermatex discharged her without just cause, she must first show that the Union's decision not to arbitrate her grievance was arbitrary, discriminatory or made in bad faith. *Vaca*, 386 U.S. at 193, 87 S.Ct. at 918. Upon a thorough review of the record the Court finds that there is no evidence to support Plaintiff's claim that the Union's decision not to proceed to arbitration was arbitrary, discriminatory, or made in bad faith.

## PREEMPTION

 Plaintiff's second and third claims for relief purport to state pendent state claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The only contract in dispute in the instant case, however, is the collective bargaining agreement which binds the Union and Thermatex. Since these claims arise from a labor contract they must be brought under § 301 and resolved by reference to federal labor law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Avco Corp. v. Aero Lodge No. 735*, 376 F.2d 337 (6th Cir.1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed. 2d 126, *rehrg. denied*, 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670 (1968) ("State law does not exist as an independent source of private rights to enforce collective bargaining agreements." *Avco*, 376 F.2d at 340). These claims are therefore preempted by § 301 and must be dismissed.

In light of the foregoing, the Court finds that the motions for summary judgment filed on behalf of the Union and Thermatex are well taken and are hereby granted.

IT IS SO ORDERED.

---

**3.** Bad judgment or simple negligence are an insufficient basis for finding that a Union breached its duty of fair representation. *Province v. Cleveland Press Publishing Co.*, 605 F.Supp. 945 (N.D.Ohio), *aff'd*, 787 F.2d 1047 (6th Cir.1986); *Chambers v. United Steelworkers of America*, 589 F.Supp. 39 (N.D.Ohio 1984); *Warner v. McLean Trucking Co.*, 627 F.Supp. 203 (S.D.Ohio 1985).