**Carol ROBINSON, Plaintiff,**

v.

**UAW LOCAL 1196, Defendant.**

**No. 1:90–CV–1949.**

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 31, 1995.

Mark D. McGraw, Cleveland, OH, for plaintiff.

Mark V. Webber, Carl E. Cormany, Bernard S. Goldfarb, Goldfarb & Reznick, Cleveland, OH, for defendant.

### OPINION & ORDER

O'MALLEY, District Judge.

Plaintiff Carol Robinson originally brought this "hybrid § 301/fair representation" case against both her ex-employer, Central Brass Manufacturing Company ("Central Brass"), and her union, Local 1196 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("the Union"). Robinson claimed that she had been discharged improperly from Central Brass for absenteeism, and further claimed that the Union had breached its duty to represent her fairly in the grievance process.

During earlier proceedings in this case, both Central Brass and the Union moved for summary judgment based on the statute of limitations. Judge White granted summary judgment in favor of both defendants.[1] Robinson then appealed Judge White's Orders. The Sixth Circuit Court of Appeals held that Judge White had properly applied the statute of limitations to Robinson's claim against Central Brass, but that the statute of limitations had been tolled as against the Union. Accordingly, the Sixth Circuit affirmed summary judgment in Central Brass's favor, but reversed Judge White's grant of summary judgment against the Union. *See Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235 (6th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 92, 126 L.Ed.2d 60 (1993).

On remand, the Union has again moved for summary judgment (docket no. 43). This time, the Union proffers three alternative grounds for its argument that Robinson can-

[1.] Judge White granted summary judgment in favor of Central Brass in his Order dated April 11, 1991, and granted summary judgment in favor of the Union in his Order dated December 19, 1991.

This case was transferred from Judge White's docket to Judge O'Malley's docket on December 1, 1994.

not prevail as a matter of law: (1) Robinson failed to exhaust her internal union remedies; (2) the Union did not breach its duty of fair representation; and (3) Central Brass did not breach its labor agreement when it discharged Robinson. Because the Court finds that at least two of these grounds are well-taken, the Union's motion for summary judgment is GRANTED.

## I.

Many of the facts of this case are set out in *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1237–38 (6th Cir.1993). Additional facts are set out below. These facts must be viewed against the legal backdrop that, although Robinson can now proceed only against the Union, it is still true that "[t]o prevail ... [she] must show *both* that the employer discharged [her] in violation of the collective bargaining agreement *and* that the Union breached its duty of fair representation during the grievance process." *Robinson*, 987 F.2d at 1239 (some emphasis added). Thus, Robinson's claim must fail if Central Brass did not violate its labor agreement when it terminated her, *or* if the Union represented her adequately during the grievance process. The Union attacks both of these prongs in its motion for summary judgment.

Regarding the first prong, the Union notes (and it is not disputed) that Robinson was absent from her job 29% of the time under the "old" attendance policy. Under a "new" attendance policy, made effective February 15, 1989, Robinson was absent 14% of the time. Admitting that this absence rate showed improvement, the Union argues that Robinson's absence rate was still unacceptable under Central Brass's new policy, and thus that Central Brass did not violate its collective bargaining agreement when it discharged her. A referee with the Ohio Unemployment Compensation Board of Review later found that Robinson was discharged for just cause.

Regarding the second prong, the Union notes (and again it is not disputed) that Robinson did not exhaust her internal union appeal remedies: "Robinson did not appeal to the last step, the UAW's Public Review Board." *Robinson*, 987 F.2d at 1237. The Union argues that this failure to exhaust her internal union appeals precludes Robinson from recovery in this case. Robinson answers that she was not required to exhaust her internal union appeal remedies when, as here, she has alleged that such an appeal would be futile.

The Union also argues, under the second prong, that as a matter of law and undisputed fact, it represented her adequately during the grievance process. Robinson does not deny that: (1) immediately after she was terminated, two representatives of the Union met with her to determine how she wanted to proceed; (2) one or more of the Union representatives conducted an investigation into all of Robinson's absences and made sure she had been informed of, and understood, the "new" attendance policy; and (3) the Union sent six representatives to a Central Brass Management Shop Committee meeting on November 1, 1989, where they argued unsuccessfully for Robinson's reinstatement. Thereafter, the Union Shop Committee members voted not to pursue Robinson's claim further (through arbitration) because they believed her grievance lacked merit and that ultimately she would lose. The Union argues that these actions on behalf of Robinson were not arbitrary, discriminatory, or in bad faith, and thus that it did not breach its duty to represent her fairly.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ While all evidence must be viewed in the light most favorable to the non-moving party, summary judgment is appropriate whenever that non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478.

■ In this context, moreover, "the trial Court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street* at 1479–80, citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988). The trial court need not seek out factual disputes nor speculate on the possibility that, under some yet unstated scenario, a meaningful factual dispute might somehow arise. The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *See Fulson v.*

*City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992). Further, the non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III.

As noted, there is no dispute regarding whether Robinson exhausted all of her internal union remedies of appeal—she did not. Rather than taking the last step available in her quest to overturn the Union's decision not to arbitrate her discharge (the last step being an appeal to the UAW's Public Review Board), Robinson filed this case. The Union now argues that, as a necessary predicate to recovery on her claim in this case, she must have exhausted all of her internal union appeals.

■ The law is well-settled that "exhaustion of grievance procedures is mandatory, unless resort to union appeal procedures is demonstrated to be futile." *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir.1989) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). The Sixth Circuit "requires a clear and positive showing of futility before excusing a failure to exhaust." *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1039 (6th Cir.1989), *cert. denied*, 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990) (internal quotations omitted). The factors for determining whether exhaustion would be futile are: (1) hostility on the part of union officials; (2) whether such appeals procedures would be adequate either to "reactivate" the grievance or to award the "full relief" sought; and (3) the delay that would occur if the procedures were followed. *Monroe v. International Union, UAW*, 723 F.2d 22, 24–25 (6th Cir.1983) (citing *Clayton v. International Union, UAW*, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981)).

■ In weighing these factors, the balance falls in favor of requiring exhaustion. *Id.* If the court finds the presence of any of these factors, it *"may* excuse the employee's failure to exhaust." *Clayton*, 451 U.S. at 689,

101 S.Ct. at 2095 (emphasis added). The presence of one of these factors, however, does not mandate excusal of a failure to exhaust; whether an employee is finally required to exhaust all internal union procedures is within the court's discretion. *Id.*

■ In her memorandum in response, Robinson does not articulate which of the three factors she relies upon to excuse her from the exhaustion requirement. Indeed, Robinson's memorandum is most notable for its citation of cases *unhelpful* to her claim.[2] The Court's own review of the case law and the evidence, however, convinces it that none of the three factors weigh in favor of excusing Robinson's failure to exhaust her claim on the basis of futility.

■ Under the first factor, Robinson has not made even a colorable argument that the Union's officials were hostile to her. In her recitation of the facts, Robinson argues that there was "a history of hostility between plaintiff and [Central Brass]." Brief in Opposition at 5. But Robinson does not argue that *the Union* was hostile toward her. Moreover, even if certain actions by *local* union officials were hostile to Robinson, hostility on the part of the local union does not necessarily show hostility on the part of the international union. *Monroe,* 723 F.2d at 25. Indeed, an important reason for appealing an adverse decision is to present the grievance to a new, presumably neutral, decision-maker. Thus, any hostility toward Robinson by the local union membership, if it existed, may not be attributed to the International Union Executive Board (which affirmed the local membership's decision not to arbitrate Robinson's grievance) or to the Public Review Board (to which Robinson failed to bring a final appeal). In sum, there is no genuine issue of material fact regarding whether un-

ion officials were so hostile to Robinson that it would have been futile for her to exhaust her internal union appeals.

Under the second factor, it must be remembered that Central Brass has been dismissed from this case, based on statute of limitations grounds. Thus, Robinson's only vital claim is against the Union, and the only relief available to Robinson against the Union is for money damages. The Union's Public Review Board can award money damages for a breach of the duty of fair representation. *See Fyffe v. Int'l United Automobile, Aerospace & Agricultural Implement Workers of America,* 1989 WL 149397 1989 U.S. Dist. LEXIS 15144 at *7 (N.D.Ohio Jan. 27, 1989) (stating, in an exhaustion analysis, that "[t]he second factor is also not favorable to plaintiffs. They are seeking money damages, a recovery that the UAW's Public Review Board can award for breach of duty of fair representation."). Therefore, the relief available from the Public Review Board would have been complete as against the Union, and "is sufficient to require exhaustion." *Rogers v. Bd. of Ed. of Buena Vista Schools,* 2 F.3d 163, 167 (6th Cir.1993).

Furthermore, even if Robinson could not have gotten "complete relief" from the Public Review Board, this factor alone would not convince the Court to exercise its discretion to excuse Robinson for her failure to exhaust all of her internal Union appeals. Robinson has avoided the Union's statute of limitations defense by arguing that: (1) internal union remedies could have settled her claim against the Union; and (2) "the statute of limitations was tolled while [she] pursued [those] internal union remedies." *Robinson,* 987 F.2d at 1244. It would be unfair to give Robinson the benefit of tolling the statute of limitations while she pursued internal union remedies,

---

2. In the "Statement of Law" section of her memorandum, Robinson discusses, in order, the following 12 cases: *Young v. U.S. Postal Service,* 907 F.2d 305 (2d Cir.1990); *Marentette v. Local 174, UAW,* 907 F.2d 603 (6th Cir.1990); *Dement v. Richmond, Fredericksburg & Potomac R. Co.,* 845 F.2d 451 (4th Cir.1988); *Balsavage v. Ryder Truck Rental, Inc.,* 712 F.Supp. 461 (D.N.J.1989); *McLinn v. Boeing Co.,* 715 F.Supp. 1024 (D.Kan. 1989); *Camporeale v. Airborne Freight Corp.,* 732 F.Supp. 358 (E.D.N.Y.1990), *aff'd without op.,* 923 F.2d 842 (2d Cir.1990); *Wright v. Boeing*

*Vertol Co.,* 704 F.Supp. 76 (E.D.Pa.1989), *aff'd without op.,* 879 F.2d 861 (3d Cir.1989); *Salisbury v. Thermatex Corp.,* 704 F.Supp. 778 (N.D.Ohio 1988); *Ruzicka v. General Motors Corp.,* 649 F.2d 1207 (6th Cir.1981); *Salinas v. Milne Truck Lines, Inc.,* 846 F.2d 568 (9th Cir. 1988); *Walk v. P\*I\*E Nationwide, Inc.,* 958 F.2d 1323 (6th Cir.1992); and *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573 (6th Cir.1994). In 9 of these 12 cases, judgment was entered *against the plaintiff.* Robinson's memorandum provides little helpful argument.

and then not require her to exhaust those remedies. Indeed, the public policy behind requiring exhaustion of the Union's internal mechanisms for settling disputes with its members was the very basis for the Sixth Circuit's earlier decision in this case.

Under the third factor, there is simply no evidence that Robinson would have suffered an unacceptable delay by pursuing the last step of the internal appeals process. Robinson tenders no evidence that pursuit of the last step would have created any delay in achieving her objective of obtaining relief, and the Court can find no such evidence on its own review of the record. In fact, it is more probable that Robinson's pursuit of this last appeal would have led to a quick and inexpensive resolution of her grievance.

In sum, this Court finds that none of the factors support Robinson's contention that it would have been futile for her to exhaust her internal Union appeal remedies. Robinson is required to make a "clear and positive showing of futility" to avoid the exhaustion requirement. *Terwilliger*, 882 F.2d at 1039. She has not done so. Accordingly, Robinson cannot succeed on her claim of unfair representation against the Union.

### IV.

■ As a separate basis for its motion, the Union argues that as a matter of law, the undisputed facts show that it did represent Robinson fairly. Noting that, to prevail, Robinson must show that the Union acted arbitrarily, discriminatorily, or in bad faith,[3] the Union argues that the evidence clearly shows that its conduct has been none of these. This Court agrees.

The record reveals that Union officials gathered relevant information to argue on Robinson's behalf, and then did argue on her behalf. Officials examined her attendance rate before and after the "new" attendance policy was implemented; reviewed the reasons that Robinson had given for her absences, including the documentation of her excuses; examined the new attendance policy to ensure it was not being wrongly enforced; argued on Robinson's behalf during her ter-

mination hearing; and then argued on Robinson's behalf after she was terminated, in pursuit of her grievance. The record further reveals that, after its initial efforts to get Central Brass to continue employing Robinson were unsuccessful, the Union decided not to pursue Robinson's grievance to arbitration. It is clear that the Union made this decision because it believed Robinson could not ultimately prevail, given the facts of her case.

■ Despite the Union's efforts on her behalf, Robinson asserts that the Union represented her unfairly because it did not keep her informed of all the details of the grievance procedures as they went forward. This assertion, even if true, is not enough. *Whitten v. Anchor Motor Freight*, 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976) ("the Union may have acted negligently or exercised poor judgment in failing to keep [plaintiff] informed of the status of his grievance, but this is not sufficient to support a claim of unfair representation."). Robinson also asserts that: (1) the Union was not thorough in its inquiry into the reasons behind her absences, so that its defense of her absenteeism rate was incomplete; and (2) the Union's ultimate determination not to pursue her grievance to arbitration was ill-decided. Not only does the Court disagree with these contentions, but conclusory assertions of this sort cannot carry Robinson's claim, as a matter of law.

■ Even if the Union was negligent in its investigation of the circumstances behind Robinson's absences, "mere negligence is insufficient to establish a breach of the duty of fair representation." *Poole v. Budd Co.*, 706 F.2d 181, 184 (6th Cir.1983). Plaintiff must establish *both* that the Union acted so unreasonably in its decision not to pursue certain avenues in investigating her claim that its action can be deemed "beyond the realm of the rational" *and* that additional investigation probably would have brought about a different decision. *See Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir.1994), citing, *Taylor v. Ford Motor*

---

**3.** *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967).

Co., 866 F.2d 895, 898–99 (6th Cir.1989). Here, Robinson asserts that the Union should have spent more time examining the reasons behind her numerous work absences, most of which she claims were reasonable. As the Union correctly notes, however, the reasons Robinson asserted for the absences, even if true and supported by strong evidence, would not change the fact that, under the collective bargaining agreement, Central Brass was entitled to discharge any employee who exhibited a "pattern of absenteeism" without regard to the reasons behind the absences. (Def. Reply at 2–3). Simply put, the company was operating under a "no-fault" absence policy when it discharged the plaintiff, and the Union was faced with assessing plaintiff's grievance in the face of that policy. Hence, additional inquiry into whether plaintiff's excuses were valid could not have brought about a different result in this case. Assuming plaintiff's "excuses" to be true (and the Court notes there is much in the record indicating they may not be), the result under the collective bargaining agreement would be the same.[4]

For these reasons, plaintiff cannot and has not satisfied her burden of establishing that a failure on the part of the Union in the investigation of her grievance, if there was such a failure, was either factually or legally meaningful to the question of whether the Union breached its duty of fair representation.

■■■■ Similarly, a union's considered decision not to pursue a member's grievance, even if the decision appears "unwise," is also insufficient to establish a breach of the Union's duty. *Walk v. P\*I\*E Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir.1992). The Sixth Circuit has held consistently that a considered decision to withdraw or to refuse to pursue a grievance is not, without more, a breach of the duty of fair representation, even where that decision may have been ill-advised. *See e.g., Ryan v. General Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir.1989) citing, *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983); *Ruzicka v. General Motors*

Corp., 649 F.2d 1207 (6th Cir.1981); *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1103 (6th Cir.1981); *Dill v. Greyhound Corp.*, 435 F.2d 231, 238 (6th Cir.1970). Here, there is no dispute that the Union decided not to arbitrate plaintiff's grievance. There also is no dispute, however, that its decision was premised on the Union's view that there was no justification for undertaking the cost of arbitration given the circumstances presented by plaintiff's grievance—i.e., numerous absences in the face of a no-fault, excessive absence policy in the collective bargaining agreement. Those circumstances do not give rise to a claim that the Union's refusal to pursue plaintiff's grievance was arbitrary.

Given the undisputed facts of this case, there can be but one conclusion as a matter of law: the Union did not breach the duty of fair representation it owed to Robinson.

### V.

Finally, the Union asserts that the undisputed facts show that Central Brass did not discharge Robinson in violation of the collective bargaining agreement. The Court's review of the facts leaves it with the impression that the Union is correct. However, the Court does not explicitly decide this issue, having already found two alternative grounds for granting the Union's motion for summary judgment. Because Robinson did not exhaust her internal union appeals (and doing so would not have been completely futile), and because the undisputed facts reveal that the Union did not act arbitrarily, discriminatorily, or in bad faith, Robinson cannot prevail on her claim against the Union as a matter of law. Accordingly, the Union's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

---

**4.** In a recent status conference with the Court, plaintiff's counsel questioned the wisdom of agreeing to the no-fault absence policy in the first place, implying the Union may have breached its duty to Robinson by doing so. This issue was not raised by the pleadings in this case and plaintiff has offered no evidence to support such a claim.